UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRACEY COLEMAN,

       Plaintiff,

    v.                               Case No. 16-cv-1530-pp

WFA STAFFING,

       Defendant.              .

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 22) AND DISMISSING CASE

On December 22, 2017, defendant WFA Staffing filed a motion for summary judgment on the ground that the plaintiff's race did not influence its staffing determination because the plaintiff was not qualified for the position—he lacked a valid driver's license. Dkt. No. 23. Because the plaintiff filed this case without the assistance of counsel, the defendant complied with Rule 56(a) by (1) providing the plaintiff with a short and plain statement that any factual assertion would be accepted as true unless the plaintiff submited his own affidavit or admissible evidence and (2) a copy of Rule 56. Dkt. No. 22. The plaintiff did not respond to the summary judgment motion by the deadline set by the rule (approximately January 21, 2018). On February 27, 2018, this court ordered the plaintiff to respond to the motion by the end of the day on March 16, 2018. Dkt. No. 27. The court warned the plaintiff that if he did not file a response by the end of that day, the court would *either* (1) accept the defendant's proposed findings as true and use them to make a decision or (2)

1

dismiss plaintiff's case for lack of diligence under Civil L.R. 41(c). Again, the plaintiff did not respond. Because the evidence before the court does not show that there is any genuine dispute as to an issue of material fact, and because the law does not support the plaintiff's claims, the court will grant the defendant's summary judgment motion and dismiss the case.

## I.      Dismissal for Lack of Diligence

Civil Local Rule 41(c) allows this court to dismiss a case—with or without prejudice—whenever it appears that a plaintiff is not diligently pursuing it. Civil L.R. 41(c) (E.D. Wis.). The plaintiff filed his complaint on November 16, 2016—sixteen months ago. Dkt. No. 1. He appeared at the Rule 16 scheduling conference on April 25, 2017, dkt. no. 21, and the court has not heard from him since. Despite the fact that the defendant filed its summary judgment motion almost three months ago, and despite the fact that the court gave the plaintiff extra time to do so, the plaintiff has not responded to the motion. The plaintiff has not provided the court with a change of address form, and the mail the court has sent him has not been returned as undeliverable. The court has a basis for concluding that the plaintiff has decided not to pursue its case. Under Civil L.R. 41(c), that is reason alone for the court to dismiss the case

## II.      Defendant's Motion for Summary Judgment

The court also finds that the defendant is entitled to summary judgment, because the undisputed facts demonstrate that the defendant did not discriminate against the plaintiff on the basis of race.

A.    Standard of Review

A court may grant summary judgment where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. Roh v. Starbucks Corp., 881 F.3d 969, 973 (7th Cir. 2018).

B.    Facts

The defendant submitted proposed findings of fact; the court deems that the plaintiff has admitted these facts, because he did not respond to the defendant's summary judgment motion. Civ. L.R. 56(b)(4) (E.D.Wis.). In addition to the defendant's facts, the court also will consider the allegations in the complaint, dkt. no. 1, because the plaintiff signed it under penalty of perjury. See Ford v. Wilson, 90 F.3d 245, 246–47 (7th Cir. 1996) (holding that a verified complaint "converted the complaint . . . into an affidavit").

Defendant WFA Staffing, an independent, locally-owned staffing agency, places individuals with businesses in the Milwaukee area. Dkt. No. 26 at ¶ 2. The defendant's mission is to meet its customers' staffing needs by matching the right worker to the right position. Id. at ¶¶4, 5. The defendant does not

have any input into determining or setting the qualifications for the positions to which it assigns workers. Id. at ¶6. Rather, the defendant's customers determine the requisite qualifications for their own positions. Id. at ¶7.

The defendant's customers inform the defendant of the open positions for which they would like the defendant to assign workers, as well as the required qualifications for those positions. Id. at ¶8. The defendant then reviews applications and identifies the best-qualified candidates for each position, based on the job requirements provided by the defendant's customers. Id. at ¶9. The defendant assesses individual applicants' skills and qualifications to match them to positions for which they meet the job qualifications. Id. at ¶10. The defendant cannot assign an individual to a position for which he or she does not possess the requisite skills or qualifications, as determined by the customer. Id. at ¶11.

The defendant employs recruiting professionals to match qualified candidates to positions. Id. at ¶12. The defendant pays its recruiters on a commission basis, based upon the number of workers the recruiters place with the defendant's customers. Id. at ¶13.

During the relevant period, Kelly Fishnick worked as a senior recruiter for the defendant. Id. at ¶14. The defendant never employed the plaintiff. Dkt. No. 25-1 at 36-37, 66. On July 22, 2016, the plaintiff, who is African American, spoke with Fishnick over the telephone. Id. at 30. Fishnick told the plaintiff to come to the office to complete a job application. Id. The plaintiff met with

Fishnick, and submitted his handwritten (and signed) job application. Id. at 16-19, 30. His application did not identify his race. Id. at 16-18; Dkt. No. 25-2.

The plaintiff applied on an assignment as an installer at RCS Innovations. Id. at 19, 21; Dkt. No. 25-2. He wrote "Installer" on the application in the box labeled "Position Applied For;" that was the only position for which he applied. Id. at 20, 35. RCS Innovations specializes in the design and installation of commercial fixtures and furnishings for companies nationwide. Dkt. No. 26 at ¶¶15, 16. Like all of defendant's customers, RCS Innovations determines the required job qualifications for the positions for which it seeks placement of workers by the defendant. Id. at ¶17. RCS Innovations has utilized the defendant's services to staff its "Installer" position. Id. at ¶18.)

The plaintiff spoke with Fishnick in person when he submitted his job application. Dkt. No. 25-1 at 30. Fishnick reviewed the job posting for the RCS Innovations installer position with the plaintiff. Dkt. No. 25-1 at 43-44; Dkt. No. 25-2. Under the "Position Description" in the job posting, installers at RCS Innovations have the responsibility for installing fixtures and performing other handyman work. Dkt. No. 25-1 at 44; Dkt. No. 25-2. The position requires travel throughout the United States—both by air and by car. Id. Installers may be away from home for two to three weeks at a time in the course of the performance of their job duties. Id. In addition, they must be comfortable with all aspects of travel, including driving rental cars. Id. RCS Innovations has determined that all installers must possess a valid driver's license. Dkt. No. 25-1 at 44; Dkt. No. 25-2; Dkt. No. 26 at ¶19.) The "Position Description" in the

job posting for the RCS Innovations installer position specified that
"[c]andidates must possess a VALID Driver's license in order to qualify for this
role." Dkt. No. 25-1 at 44-45; Dkt. No. 25-2. The defendant had no input into
the determination that an individual must possess a valid driver's license to
qualify for a position as an installer at RCS Innovations. Dkt. No. 26 at ¶20.
More important, the plaintiff understood when he submitted his job application
that he had to possess a valid driver's license to qualify for the installer
position at RCS Innovations. Dkt. No. 25-1 at 22, 33, 35, 44-45.

At that time, the plaintiff did not possess a valid driver's license. Dkt. No.
25-1 at 23, 35. He answered "No" on the application to the question "Do you
have a valid Driver's License?" Dkt. No. 25-1 at 17; Dkt. No. 25-2. His driver's
license had been in revoked status since approximately 1989. Dkt. No. 25-1 at
22-23. The plaintiff testified at his July 31, 2017 deposition that he still did not
possess a valid driver's license. Dkt. No. 25-1 at 12.

The defendant did not select the plaintiff for the installer position at RCS
Innovations. Dkt. No. 26 at ¶21. The defendant could not assign him to the
position because he did not possess a required job qualification as determined
by RCS Innovations—a valid driver's license. Dkt. No. 26. The plaintiff testified
at his deposition that he applied to the defendant to complete training as an
"Installer Helper," and that after this training he could work as an installer at
RCS Innovations. Dkt. No. 25-1 at 9-10. As of the date of the summary
judgment filings, however, the defendant never had assigned anyone to work at
RCS Innovations as an "Installer Helper," and was not aware of the existence of

such position at RCS Innovations. Dkt. No. 26 at ¶¶25, 27. RCS Innovations has never utilized the services of the defendant to staff any position titled "Installer Helper." Id. at ¶26.

In his complaint, the plaintiff alleged that the defendant discriminated against him based on his race. Dkt. No. 1 at 5.[1] At his deposition, he indicated that he was suing the defendant because of his race, "being African American." Dkt. No. 25-1 at 21-22. He conceded at the deposition, however, that he knew other African Americans who had been hired as installers. Id. at 22. For example, the plaintiff learned about the RCS Innovations installer position from his nephew, Claude Wallace, who is African American. Id. at 8, 13. Wallace has a valid driver's license and the defendant assigned Wallace to work at RCS Innovations. Id. at 12-13, 23-24. The plaintiff also testified that the defendant assigned his two other nephews, Marlin and Melvin Coleman (both African American individuals with valid driver's licenses), to work at RCS Innovations approximately two weeks after he submitted his application. Id. at 13, 31-32.

At his deposition, when confronted with the fact that the defendant had not discriminated against his nephews based on their race, the plaintiff said that he was "still going to stick with race" as the basis for his lawsuit. Id. at 23-24. He testified that Fishnick told him that there were two or three applicants "ahead" of him, id. at 17, 22. He did not know the race of the applicants whom he claims Fishnick told him were "ahead" of him. Id. at 22. The plaintiff also

---

[1] In the screening order, the court dismissed the plaintiff's age discrimination claim, because he had not alleged sufficient facts to support that claim. Dkt. No. 5 at 5.

did not know what positions these applicants applied for through the defendant. Id. at 25.

The plaintiff testified that he could not name a single Caucasian individual without a valid driver's license who WFA Staffing assigned to an installer position at RCS Innovations. Id. He did not know any Caucasians who got the position for which he applied. Id. at 35. The plaintiff supports his race discrimination claim with his allegation that the defendant hired other African American individuals, but not him. Id. at 26. He agreed with opposing counsel at the deposition that it was "fair to say" that, if the defendant was discriminating against African Americans, the defendant would not have hired his three nephews. Id. at 33. He also acknowledged that "[i]t could be" reasonable to believe that the defendant did not hire him because he did not have the valid driver's license that RCS Innovations required for the Installer position. Id.

C.    Applicable Law

The plaintiff alleges that the defendant discriminated against him based on race when the defendant failed to assign him to a position with one of the defendant's customers.

The Seventh Circuit Court of Appeals recently explained that it has "cleaned out "the rat's nest of surplus tests" that plagued circuit case law on the subject of race discrimination. Madlock v. WEC Energy Group, Inc., 2018 WI 1312260, *3 (7th Cir. March 14, 2018) (citing Ortiz v. Werner Enters., Inc., 834 F.3d 760, 766 (7th Cir. 2016)). Courts considering whether a plaintiff has

proven a claim for race-based employment discrimination now ask the following question: "[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." Id. (citing Ortiz, 834 F.3d at 765).

There is no evidence in this case that a jury could use to conclude that the defendant discriminated against the plaintiff based on the fact that he is African American. The undisputed facts—which include the plaintiff's own sworn testimony—establish that he did not meet the job requirements. Fishnick reviewed the job posting for the installer position with the plaintiff, and the plaintiff understood that he needed a valid driver's license to be placed in the job. The plaintiff testified in his deposition that he did not possess a valid driver's license when he applied for the job (and still didn't as of the date of the deposition). The undisputed evidence establishes that (1) the defendant did not set the job requirements, (2) RCS Innovations required a valid driver's license because the Installer position requires extensive travel, and (3) the defendant could not place an individual in a position for which he or she was not qualified. The plaintiff filled out the job application, indicated on that application that he did not possess a valid driver's license, signed the application and submitted it to the defendant. At page of four of his complaint, the plaintiff alleged that "Fishnick hired two other individuals for the same position that the plaintiff applied for two weeks after the plaintiff's application was rejected." Dkt. No. 1 at 4. In his deposition, the plaintiff explained that he

knew the individuals because they were his nephews. The plaintiff knew that these individuals possessed valid driver's licenses.

The undisputed evidence also indicates that the defendants placed other African American individuals in the job for which the plaintiff applied. In fact, RCS Innovations hired three African American individuals for that job, all of whom were the plaintiff's nephews. The undisputed evidence shows that those three people met the job qualification of having a valid driver's license.

The plaintiff has not shown that the defendant placed people of other races in installer positions with RCS even though they did not have valid driver's licenses. There simply is no evidence to support the plaintiff's claim that the defendant did not place him as an installer based on his race. The court must grant summary judgment in favor of the defendant.

## III.    Conclusion

The court **GRANTS** defendant's motion for summary judgment. Dkt. No. 22.

The court **ORDERS** that this case is **DISMISSED**. The court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or

excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 21st day of March, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**